IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ALEXANDER CARCAMO,        §
    Petitioner,        §
                 §
v.        §        No. 3:22-CV-2891-N-BW
                 §
DIRECTOR, TDCJ-CID,        §
    Respondent.        §        Referred to U.S. Magistrate Judge[1]

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is the Petition for a Writ of Habeas Corpus by a Person in State Custody, received on December 23, 2022. (Dkt. No. 3.) Based on the relevant filings and applicable law, the Court should **DENY** the petition.

## I. BACKGROUND

Petitioner Alexander Carcamo was indicted for murder in Dallas County in cause number F-1833424 and entered a plea of not guilty. (Dkt. No. 10-12 at 14.) Following a jury trial, on November 18, 2019, he was convicted of murder and given a 40-year sentence. (Dkt. No. 10-12, at 267 (Clerk's Record-Judgment of Conviction.))

Carcamo pursued relief in state court, but, on March 1, 2021, the Fifth Court of Appeals affirmed Carcamo's conviction. (Dkt. No. 10-16, at 10-21 (Misc. Doc.-Memorandum Opinion.)) The Texas Court of Criminal Appeals ("TCCA")

---

[1] This habeas case was referred to a magistrate judge for case management by Special Order 3-251. (*See* Dkt. No. 1.) On August 23, 2024, it transferred and reassigned to the undersigned by Special Order 3-354. (*See* Dkt. No. 18.)

subsequently refused his petition for discretionary review on June 9, 2021.[2]  Carcamo

then filed a state application for writ of habeas corpus, which the TCCA denied

without written order.  (*See* Dkt. No. 10-20 at 42-61; *see also* Dkt. No. 10-23.)

      Having exhausted his state remedies, Carcamo filed the instant federal petition

raising seven grounds for relief.  His first five claims center on ineffective assistance

of trial counsel, alleging that counsel failed to: (1) impeach Detective McCown with

a police report showing that McCown knew a suspects placed in a lineup; (2) retain

an expert witness to support a lesser-included-offense instruction; (3) object to

"judicial interference" when the trial court instructed the State to consider a witness

hostile; (4) challenge allegedly improper comments by the trial court regarding

identification evidence; and (5) prepare Carcamo to testify to support the requested

lesser-included-offense instruction.  (*See* Dkt. No. 3 at 6-12.)  In Ground Six,

Carcamo alleges prosecutorial misconduct, claiming the State failed to correct false

and perjured testimony by Detective McCown concerning lineup procedures.  (*See id.*

at 12-13.)  And in Ground Seven, Carcamo alleges ineffective assistance of appellate

counsel for failing to identify and raise stronger, preserved issues on appeal.  (*See id.*

at 14.)

      Respondent contends that all claims should be denied because Carcamo has

failed to establish that the state court's rejection of his complaints was objectively

---

[2] *See* Texas Courts Online, www.txcourts.gov (last visited November 17, 2025)
(official internet site of the CCA showing Carcamo's PDR was refused on June 9, 2021).

unreasonable under 28 U.S.C. § 2254(d).  (*See* Dkt. No. 12.)  As discussed below, Carcamo's claims do not warrant federal relief.

## II.  LEGAL STANDARDS AND ANALYSIS

### A.    Under AEDPA, federal courts must apply a deferential standard of review.

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019).  In the district court, this process begins with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).  Under the AEDPA, a state prisoner may not obtain federal habeas relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This standard "restricts the power of federal courts to grant writs of habeas corpus" and ensures that "state courts play the leading role in assessing challenges to state sentences based on federal law." *Shinn v. Kayer*, 592 U.S. 111, 124 (2020).  A state court decision is "contrary" to clearly established federal law only if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it

reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)). A decision involves an "unreasonable application" of federal law when the state court "identifies the correct governing principle" but "unreasonably applies that principle to the facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000).

Critically, the question is not whether the state court was incorrect, but whether its decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. Federal courts must "determine what arguments or theories supported . . . or could have supported the state court's decision" and then ask whether fairminded jurists could disagree that those arguments are inconsistent with Supreme Court precedent. *Id.*

Under this highly deferential standard, a petitioner must do more than show the state court's factual or legal conclusions were incorrect; he must show that they were "objectively unreasonable." *Williams*, 529 U.S. at 409-10. As the Supreme Court has explained, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the

4

first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). State court factual findings are "presumed to be correct" unless the petitioner can rebut this presumption by "clear and convincing evidence." *Id.* at 293.

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) ("As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

**B.     Carcamo's ineffective assistance claims fail under both AEDPA and *Strickland*.**

In his first five grounds, Carcamo contends he received ineffective assistance because trial counsel: (1) failed to impeach Detective McCown with a police report; (2) failed to call an expert witness to support a lesser-included-offense instruction; (3) failed to object to the trial court allowing the prosecution to treat a witness as hostile; (4) failed to object to improper comments by the trial judge; and (5) failed to prepare him to testify to support the requested lesser-included-offense instruction. (*See* Dkt. No. 3 at 6-7, 11-12.)  These claims are without merit.

When, as here, a petitioner claims ineffective assistance of counsel, that claim is subject to both AEDPA's deferential standard and the substantive framework

established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The result is a review that is "doubly deferential," applying first to the state court's adjudication of the claim and second to counsel's professional judgment. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011) (stating that a court's review requires a "highly deferential" look at counsel's performance). That "double deference" requires more than showing that counsel's performance was imperfect or that the outcome might have been different. *Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.

The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See Strickland*, 466 U.S. at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment[.]" *Buck v. Davis*, 580 U.S. 100, 119 (2017) (quoting *Strickland*, 466 U.S. at 687). To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This means a petitioner must overcome both the strong presumption that counsel's conduct fell within the "wide range of reasonable professional assistance," and that "under the circumstances, the challenged action might be considered sound trial strategy."

6

*Richter*, 562 U.S. at 105.  A failure to establish either prong defeats the claim.
*Strickland,* 466 U.S. at 700.

      1.      Ground One provides no relief since the police report was not admissible impeachment evidence.

Carcamo first contends that trial counsel rendered ineffective assistance by failing to use Officer Krista King's police report to impeach Detective McCown's testimony concerning his and Officer Olegario Conde's knowledge of the suspects prior to the photographic lineup.  (*See* Dkt. No. 3 at 6; *see also* Dkt. No. 16 at 3-7 (Petitioner's Brief in Support).  During the identification hearing, Detective McCown described the process he used to administer the photographic lineup and testified neither he nor Officer Conde knew which photograph depicted the suspects when he administered the lineup.  Carcamo argues that Officer King's report shows that Detective McCown knew, or reasonably should have known, the suspects' identities and therefore could not credibly testify as a blind administrator.  (*See* Dkt. No. 3 at 6, 8-11.)  Carcamo's claim fails under both *Strickland* prongs and AEDPA's deferential standard.

First, Carcamo has not shown how counsel could have admitted Officer King's report under the Texas Rules of Evidence.  The contents of a police report typically constitute inadmissible hearsay under Texas law because it is an out-of-court written statement offered to prove the truth of the matters asserted.  *See* Tex. R. Evid. 801, 802; *see also Mosquera v. State*, 877 S.W.2d 40, 41 (Tex. App.—Corpus Christi 1994, no pet.) (citing Tex. R. Crim. Evid. 803(8)(B)).  Texas law permits

impeachment by prior inconsistent statement only when the statement was made by the witness impeached or is otherwise attributable to that witness. *See Abdygapparova v. State*, 243 S.W.3d 191, 204 (Tex. App.—San Antonio 2007, pet. ref'd) (holding that a third-party's letter could not impeach the defendant because "it must be a statement made by the witness")). Officer King did not testify at trial, and her report reflects her own observations, not Detective McCown's statements. Trial counsel therefore could not have impeached Detective McCown with Officer King's statement.

Even assuming counsel could have somehow introduced the report, his decision not to do so may be viewed as reasonable trial strategy. The report contains extensive details about the evidence against Carcamo—some of which were not otherwise admitted at trial. Counsel reasonably could have concluded that introducing the report would cause more harm than good. Such strategic decisions "cannot be the basis for constitutionally ineffective assistance of counsel unless [they are] so ill chosen that [they] permeate[] the entire trial with obvious unfairness." *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983). Nothing in the record suggests trial counsel's decision rose to that level.

The record further shows that counsel actively litigated the identification issue. Counsel moved for and obtained an identification hearing at which both Detective McCown and Officer Conde testified. (Dkt. No. 10-3 at 5-45 (Identification Hearing.)) Detective McCown testified that, at the time of administering the lineup, he "had no idea who the suspects were." (*See id.* at 11.) Officer Conde

8

acknowledged he had an "overview understanding" of possible suspects because of a related traffic stop but did not suggest Detective McCown possessed similar knowledge. (*See id.* at 20.) The trial court considered this testimony along with the video of the lineup and concluded the procedures were not unduly suggestive. (*See id.* at 44.) Counsel's decision to address lineup procedures through live testimony, rather than attempting to introduce a written police report containing potentially harmful information, falls well within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

More importantly, Carcamo cannot establish prejudice. Even if counsel had pursued impeachment as Carcamo now proposes, the evidence presented at trial forecloses any reasonable likelihood of a different result. The record includes testimony from Carcamo's cousin, Lisandro Beltran, describing the encounter and Carcamo's actions and statements during and after the shooting. (Dkt. No. 10-3 at 162-67.) Beltran testified that when he told Carcamo, "you don't need to do this . . . we just fight, we can fight," Carcamo responded by stating "if I have a gun, why not use it?" (*Id.* at 166.) Beltran further testified that Carcamo shot at the three men from inside the vehicle. (*See id.* at 167.) The State also introduced physical evidence—including gunshot residue in the vehicle, a firearm and ammunition recovered from Carcamo's residence, cell phone records, and ballistics testing matching Carcamo's Smith & Wesson to the crime scene—arguing that this evidence supported its theory of the offense and Beltran's account. (Dkt. No. 10-4 at 28-30, 122-23, 141-54, 169-73.) Given this evidence, Carcamo does not explain how any

marginal impeachment value from Officer King's report would create a reasonable probability of a different result.

For these reasons, Carcamo cannot establish either deficient performance or prejudice under *Strickland.* This claim warrants no relief.

2. Ground Two fails because Carcamo's expert witness allegation is unsupported.

Carcamo next alleges that trial counsel was ineffective for failing to retain an expert witness to support a lesser-included offense instruction. (*See* Dkt. No. 3 at 6, 11.) At trial, counsel cross-examined the State's medical examiner about the irregular bullet wound and used that testimony to argue that the shot may have ricocheted, which he claimed could support a lesser-included offense. (*See* Dkt. No. 10-4 at 97-101, 225-26.) Carcamo asserts that counsel should have presented additional expert testimony to bolster this theory. But Carcamo identifies no expert, no proposed testimony, and no indication that such evidence would have supplied the factual basis required for the instruction. This claim is conclusory and speculative and does not warrant relief.

To prevail on a claim that counsel failed to call a witness, a petitioner must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy

and because allegations of what a witness would have testified are largely
speculative." *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (citations omitted).

Carcamo's claim fails these basic requirements. Carcamo identifies no expert
by name, describes no field of expertise, and provides no account of what specific
testimony an expert would have provided. Nor does Carcamo demonstrate how the
hypothetical expert's testimony would have supported a lesser-included-offense
instruction. His claim amounts to nothing more than a bare assertion that counsel
"should have" called an expert.

The record further undermines this claim. Through cross-examination of the
State's medical examiner, counsel elicited testimony about irregular patterns in the
bullet wound and raised the ricochet theory in court. (*See* Dkt. No. 10-4 at 97-101,
225-26.) The medical examiner acknowledged that the irregular wound could be
consistent with a ricochet but also testified that determining whether the shooting
was accidental required trajectory analysis beyond the scope of his autopsy. (*See id.*)
The trial court nonetheless denied counsel's lesser-included-offense request for
insufficient supporting evidence. (*See id.* at 225-26.) On this record, counsel's
decision not to pursue a separate expert—after obtaining testimony from the State's
own expert and raising the issue with the court— represents a reasonable strategic
choice, not deficient performance. *See Strickland*, 466 U.S. at 689.

Even if counsel's performance were somehow considered deficient, Carcamo
cannot demonstrate prejudice. He offers no evidence that an expert would have
provided testimony capable of supporting a lesser-included-offense instruction

11

altering the jury's verdict. Counsel already presented the accidental-ricochet theory through cross-examination, and the trial court rejected it. The trial record also contained testimony describing how Carcamo deliberately armed himself, failed to heed pleas to stop, and made statements such as "if I have a gun, why not use it?" These are matters the jury were entitled to consider in assessing intent. Under Texas law, intent may be inferred from use of a deadly weapon in a deadly manner, and such inference is recognized as "almost conclusive" absent evidence of a lesser mental state. *Williams v. State*, 502 S.W.3d 262 (Tex. App.—Houston [14th Dist.] 2016) (citing *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993)). Without identifying admissible testimony that would have altered the lesser-included-offense analysis, he cannot show prejudice.

Carcamo's bare, speculative assertion that counsel should have called an expert to provide unspecified testimony cannot satisfy *Strickland*'s demanding requirements. This claim does not warrant relief.

3.   Ground Three fails because an objection to the hostile-witness designation would have been futile.

Carcamo next contends that he was deprived of his Sixth Amendment rights due to trial counsel's failure to object to judicial interference. (*See* Dkt. No. 3 at 7.) He argues that counsel should have objected when the trial court sua sponte instructed the State to treat Beltran as a "hostile witness," an action he characterizes as judicial interference and "furthered the State's purpose." (*See id.* at 7,11.)  This

claim fails because any objection would have been futile, and Carcamo cannot show prejudice.

A trial court's decision to declare a witness hostile is a matter committed to its broad discretion, and courts consistently uphold such rulings where the record reflects evasiveness, inconsistency, or reluctance to testify. *United States v. Elorduy*, 612 F.2d 986, 989 (5th Cir. 1980). Texas law is no different. Rule 611(a) authorizes the trial court to "exercise reasonable control over the mode and order of examining witnesses" to ensure "procedures effective for determining the truth." Tex. R. Evid. 611(a). And Rule 611(c) expressly permits leading questions when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party.

The record here amply supports the trial court's determination. Beltran testified that he was "close" with Carcamo, viewed him as "special" since childhood, and repeatedly stated that he was unhappy about testifying and "did not want to be in court." (*See* Dkt. No. 10-3 at 154-55.) Before the hostile-witness designation, Beltran initially claimed he had difficulty remembering the incident but soon acknowledge it was a memorable day, demonstrating an inconsistency in his testimony. (*See id.* at 164-65.) Nothing in the record suggests the court's ruling was motivated by bias rather than Beltran's evasiveness and reluctance to testify. Under these circumstances, the trial court acted well within its discretion under Rule 611(a) to designate Beltran as hostile.

Because the ruling fell squarely within the court's discretion, it likely that an objection by trial counsel would have been overruled. A trial court's discretionary

decision to permit leading questions is a routine evidentiary matter, not the type of judicial conduct that constitutes interference with the adversarial process. *See Holbert v. State*, 457 S.W.2d 286, 288 (Tex. Crim. App. 1970) (recognizing that it is within the trial court's sound discretion to permit leading questions to a hostile witness). Trial counsel therefore did not display "ineffective lawyering" for declining to raise a meritless objection. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994); *see also Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness.").

Carcamo also fails to establish prejudice. He does not explain how the substance of Beltran's testimony would have been different had the prosecution been limited to non-leading questions. Instead, Carcamo argues the hostile witness designation was "judicial interference" that "furthered the State's purpose," but this reflects disagreement with the ruling rather than a showing of prejudice. Carcamo identifies no testimony that changed as a result of the designation and no basis to conclude the verdict would have differed without the designation.

For these reasons, Carcamo cannot demonstrate ineffective assistance. The state court's rejection of this claim was a reasonable application of federal law. Ground three should be denied.

14

4.    Ground Four does not warrant relief where the court's identification
remarks caused no prejudice.

Carcamo next alleges that counsel was ineffective for failing to object to the

trial court's phrasing when overruling his ongoing objection to the in-court

identifications.  (Dkt. No. 3 at 12.)  During the State's examination of two

eyewitnesses, each witness identified Carcamo in open court, and the prosecutor

asked that the record reflect the identification.  (*See* Dkt. No. 10-3 at 115-16, 139-40.)

The trial court overruled counsel's standing objection and stated that the record

would reflect the witnesses "correctly identified" the defendant.  (*See id.*)  Carcamo

contends that this wording improperly endorsed the identification and should have

prompted an additional objection from counsel.  An examination of one of these

occasions—both of which follow the same pattern—reveals that the record does not

support this claim.

During the State's examination of Froylan Hernandez, the witness identified

Carcamo as the person he saw arguing with the decedent before the shooting

occurred.  The prosecutor then asked that the record reflect the identification.  (Dkt.

No. 10-3 at 115-16.)  The trial court responded, "Will there be any objection?"

Defense counsel immediately addressed the court, stating, "There will be the

objection that has been previously stated, Your Honor," thereby reiterating his on-

going objection to the in-court identification.  (*See id.* at 116.)  The court replied,

"Okay.  That's noted to preserve. . . . The record will reflect the witness correctly

identified the defendant."  Counsel then sought clarification, asking, "And again,

15

I'm sorry, Judge, are you again overruling my objection?" The court confirmed, "It is overruled. It's preserved for potential appellate record." (*See id.*) This exchange shows that counsel did object to the identification, and the court ruled on that objection. Once the court overruled the objection, counsel had no obligation to object separately to the court's statement that "the record will reflect" what had occurred in open court.

The Fifth Circuit has recognized that deciding whether and when to object in front of the jury is a "quintessential matter of trial strategy not to be second-guessed." *Thomas v. Thaler*, 520 F. App'x 276, 278 (5th Cir. 2013). The purpose of an objection is to alert the court to an alleged error and permit a ruling. *See Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002). Here, counsel accomplished that. *Strickland* does not require counsel to interrupt the court's ruling or object to the judge's neutral restatement of what occurred in open court. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."). Under these circumstances, Carcamo cannot show deficient performance based on counsel's decision not to object to the court's phrasing.

Even assuming the court's phrasing was improper, Carcamo cannot show it prejudiced his defense. The court did not endorse the accuracy of the identifications, comment on witness credibility, or provide the jury with information they had not already seen firsthand. In court identifications are a routine part of a criminal trial,

16

and the jury was entitled to observe the witnesses and evaluate that testimony for themselves—particularly where misidentification was the central defense theory. Counsel objected to the identifications, the court overruled the objection, and the matter was preserved for appeal. Carcamo offers no argument that the court's procedural restatement affected the jury's evaluation of the identification evidence or the fairness of the trial. He therefore fails to meet *Strickland*'s prejudice requirement.

Ground Four provides no basis for relief and should be denied.

5.  **Ground Five lacks merit because Carcamo declined to testify and offers no alternative testimony in support of his claim.**

Carcamo's Ground Five contends that counsel failed to adequately prepare him to testify in support of a lesser-included-offense instruction. (Dkt. No. 3 at 12.) He asserts that counsel told him a lesser-included-offense theory would support probation but did not adequately prepare him to testify on that issue, particularly after the court's bond ruling. (*See id.*) Yet Carcamo identifies no specific testimony he would have offered or how additional preparation would have supported the requested instruction. This claim is conclusory and contradicted by the record.

To begin, Carcamo never explains how counsel should have prepared him differently to testify. He identifies no omitted questions, no unaddressed topics, and no specific testimony that he was allegedly unable to give. Such vague assertions cannot overcome the strong presumption that counsel's conduct was reasonable. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("Absent evidence in the record, a

court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

Further, the record affirmatively contradicts Carcamo's claim. After the trial court found Carcamo's bond insufficient and ordered him held in custody, counsel immediately objected that the ruling created a hardship to prepare Carcamo to testify. (Dkt. No. 10-3 at 220-21.) In response, the court noted counsel could meet with Carcamo before the jury arrived the following morning. (*See id.*) Counsel's objection and the court's accommodation reflect active trial preparation, not neglect.

Carcamo appears to suggest that the court's decision to hold him in custody impaired counsel's ability to prepare him to testify, and that this supposed lack of preparation explains why he ultimately declined to take the stand. (*See* Dkt. No. 3 at 12.) The record provides no support for that inference. Counsel objected to the bond ruling precisely because it limited preparations, the court accommodated that concern, and counsel later confirmed on record that he had consulted with Carcamo on whether he would testify. (*See* Dkt. No. 10-3 at 220-21; *see also* Dkt. No. 10-4 at 224-25.) The court then placed Carcamo under oath, advised him of his absolute right to testify in his own defense, and explained that the jury could not hold his silence against him. (*See* Dkt. No. 10-4 at 225.) Carcamo stated that he understood that right but ultimately declined to testify. (*See id.*) This sequence—counsel's documented need for additional preparation, the court's provision of that time, counsel's confirmation he met with Carcamo, and Carcamo's own sworn acknowledgement that he both understood and declined his right to testify—does not

18

support Carcamo's claim that his decision resulted from anything other than his own informed choice.

Even assuming counsel should have provided additional testimonial preparation, Carcamo fails to establish prejudice. He identifies no specific truthful testimony he would have offered, or how any testimony would have supplied the evidentiary foundation required for a lesser-included-offense instruction, much less persuaded the jury to accept it. Under Texas law, a defendant is entitled to a lesser-included instruction only when (1) the lesser offense is included within the proof necessary to establish the charged offense, and (2) there is some evidence that the defendant, if guilty, is guilty only of the lesser offense. *See Young v. State*, 283 S.W.3d 854, 875 (Tex. Crim. App. 2009). Carcamo identifies no testimony—hypothetical or otherwise—that would meet this standard, particularly in light of Beltran's detailed account of deliberate conduct.

The record of counsel's efforts at trial—particularly regarding the lesser-included offense instruction—reinforces this conclusion. At trial, counsel sought lesser-included instructions for manslaughter and negligent homicide based on the medical examiner's testimony that the bullet might have struck another object before hitting the decedent. (*See* Dkt. No. 10-4 at 226.) The trial court expressly rejected that theory and denied the instruction. Nothing in Carcamo's petition suggests he would have supplied different or additional testimony that would have changed the court's ruling. His allegation that he was "unprepared" therefore fails to show how

19

any purported preparation would have produced testimony capable of meeting the second prong of *Young*.

Without identifying concrete, admissible and legally sufficient testimony he would have offered—and demonstrating a reasonable probability that such testimony would have altered the jury charge—Carcamo cannot demonstrate prejudice under *Strickland*. This claim should be denied.

### C.    Carcamo cannot establish prosecutorial misconduct.

Carcamo's Ground Six asserts that the prosecution violated due process by allowing Detective McCown's allegedly "perjured" testimony to stand uncorrected during the pretrial identification hearing. (*See* Dkt. No. 3 at 12.) He claims the State knew, or should have known, that Detective McCown's testimony about his role as a "blind administrator" and his knowledge of the suspects was inaccurate yet failed to take corrective action—invoking the constitutional standards governing the State's duty not to permit testimony it knows to be misleading. (*See id.* at 12-13.) The State responds that the claim fails under *Napue v. Illinois*, 360 U.S. 264 (1959), because Carcamo cannot satisfy any of the required elements. The undersigned agrees.

Although Carcamo does not cite *Napue*, due process claims alleging the State knowingly used or allowed false testimony are governed by *Napue* and its progeny. *See Westley v. Johnson*, 83 F.3d 714, 716 (5th Cir. 1996); *see also Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007). Under that framework, a petitioner must establish (1) the testimony was actually false; (2) the prosecution knew or should have known of the falsity; and (3) the false testimony was material—meaning there is a

"reasonable likelihood" it influenced the jury's verdict. *Reed*, 504 F.3d at 474

(quoting *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996)). Minor inconsistencies

or conflicts between witnesses or between testimony and police reports do not

amount to perjury. *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990)

("[I]nconsistencies in witnesses' testimony at trial are to be resolved by trier of fact

and do not suffice to establish that certain testimony was perjured." (internal

citations omitted)); *see also U.S. v. Dunnigan*, 507 U.S. 87, 87 (1993) ("Perjury is

committed when a witness testifying under oath or affirmation gives false testimony

concerning a material matter with the willful intent to provide false testimony.")).

Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury.

Carcamo identifies two purported inconsistencies, but neither establishes that

Detective McCown's testimony was actually false. First, Carcamo relies on Officer

Conde's testimony that he had an "overview understanding" of who the suspects

might be from a prior traffic stop, as contradicting Detective McCown's prior

testimony. (*See id.* at 19-20.) But Officer Conde clarified that he was not intimately

familiar with the suspects, took steps to avoid influencing the witness, and made

clear he simply translated while Detective McCown turned the lineup pages. (*See id.*

at 20-22.) This does not contradict Detective McCown's statements about his own

knowledge or responsibilities. At most, the officers describe their familiarity

differently. Such discrepancies do not amount to perjury. *See Koch*, 907 F.2d at 531.

Second, Carcamo points to Officer King's police report listing Detective

McCown among officers who went to Carcamo's residence early in the investigation.

(*See* Dkt. No. 3 at 13.)  But Officer King—not Detective McCown—authored the report, and she did not testify.  A non-testifying officer's written summary does not establish that Detective McCown falsely testified when he said he was not "otherwise involved" in the investigation.  (*See* Dkt. No. 10-3 at 10.)  More importantly, even if Officer King's report suggested Detective McCown accompanied other officers to Carcamo's residence earlier in the investigation, such a discrepancy reflects, at most, a matter of "credibility" not proof of perjury.  *Koch*, 907 F.2d at 531.

Even assuming some aspect of Detective McCown's testimony is considered inaccurate, Carcamo offers no evidence that the prosecution knew or should have known it was false.  *See Westley*, 83 F.3d at 716.  To the contrary, the State called both Detective McCown and Officer Conde at the same pretrial identification hearing.  (*See* Dkt. No. 10-3.)  Officer Conde openly testified to the extent of his prior knowledge and described the precautions he took to prevent influencing the witness.  (*See id.* at 19-22.)  The State did not attempt to conceal the officers' respective roles or knowledge levels; it presented both accounts to the trial court.  Nor does Officer King's report establish prosecutorial knowledge.  Carcamo's assertion that the prosecution "must have known" is speculation, which is insufficient to meet the second *Napue* prong.  *See Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996) (explaining that relief is unavailable where the petitioner cannot show the witness's testimony was actually false).

Furthermore, the materiality requirement is critical. Even if false testimony is identified, habeas relief will not be granted unless the petitioner demonstrates that the false testimony could have reasonably affected the jury's verdict. *See Corro v. Thaler*, No. 3:11-CV-2490-M BH, 2012 WL 4928898, at *8 (N.D. Tex. Sept. 4, 2012), *adopted*, 2012 WL 4929273 (N.D. Tex. Oct. 16, 2012). Several considerations preclude materiality.

First, the testimony at issue occurred at a pretrial hearing, not before the jury. The trial judge, not the jury, assessed the lineup's suggestiveness after hearing from both officers and viewing the video of the procedure. The court admitted the lineup based on that independent evaluation—not on any uncorrected testimony. (*See* Dkt. No. 10-3 at 44.) Second, and more importantly, the State's evidence did not hinge on the photographic lineup. The jury heard multiple eyewitness identifications, including detailed, first-hand testimony describing Carcamo's conduct in and around the time of the shooting. (*See* Dkt. No. 10-3 at 162-64, 166-67, 169-73.) The State also presented extensive physical and forensic evidence connecting Carcamo to the offense, *e.g.*, gunshot residue in his truck and ammunition, magazines, and a firearm cleaning kit recovered from his bedroom. (*See* Dkt. No. 10-4 at 28-30, 122-23.) Given this independent body of evidence, there is no reasonable likelihood that any uncertainty about blind-administrator procedures at the pretrial hearing affected the jury's verdict.

Because Carcamo failed to show (1) any testimony was actually false, (2) the prosecution knew of any falsity, or (3) any reasonable likelihood that the alleged

falsity affected the jury's verdict, "fairminded jurists could disagree" with the conclusion he urges. *Richter*, 562 U.S. 86 at 101. Ground Six should be denied.

**D.    Ground Seven fails because Carcamo identifies no stronger omitted issue and cannot show prejudice.**

Finally, Carcamo contends he was denied effective assistance of counsel on direct appeal because appellate counsel raised only two issues—both of which, in his view, were "weak"—and failed to pursue other issues he argues were preserved for appellate review. (Dkt. No. 3 at 14.) Liberally construing his pro se allegations, he appears to contend that appellate counsel should have raised: (1) that the State used his family to portray him as dangerous, and (2) that the trial court interfered with his ability to prepare to testify by requiring him to remain in custody on an insufficient bond. (Dkt. No. 3 at 14.) These allegations fail on the merits.

As with all ineffective-assistance claims, Carcamo must first satisfy *Strickland*'s requirement to show that appellate counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. That standard is particularly deferential in the appellate context. Building on S*trickland*, the Supreme Court in *Smith v. Robbins*, 528 U.S. 259, 288 (2000), explained that a petitioner challenging appellate representation must show that counsel unreasonably failed to raise a claim that was "clearly stronger than those presented." Appellate counsel, however, is not required to raise every nonfrivolous issue, and strategic "winnowing" of weaker claims is the hallmark—not the antithesis—of effective appellate advocacy. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). Thus, ineffective assistance exists only

24

where the omitted claim was not only viable, but obviously superior to the claims counsel chose to pursue.

Carcamo does not meet this demanding standard.  He asserts that appellate counsel's two issues were defective because one was "void on appeal" and that neither could be granted because of the "manner in which they were raised."  (Dkt. No. 3 at 14.)  But he identifies no rule of preservation counsel allegedly violated, no authority explaining why either issue was unreviewable, and no argument demonstrating that counsel's briefing rendered the issues legally incapable of succeeding.   And, as the State correctly notes, the Fifth Court of Appeals addressed both issues on the merits, confirming they were properly preserved and reviewable. (*See* Dkt. No. 12 at 37; *see also* Dkt. No. 10-16 at 10-30.)  This directly undermines Carcamo's premise that one of the issues was barred from consideration.  Moreover, even accepting his disagreement with appellate counsel's strategic choices, he simply does not identify what, precisely, about his two "stronger" issues would have provided a more compelling path to relief on appeal.  Simply labeling counsel's issues as "weak" does not overcome *Strickland*'s presumption of reasonable performance or satisfy *Robbins*' requirement that the omitted issues be demonstrably superior.

Even assuming Carcamo could show deficient performance, he cannot satisfy *Strickland*'s second requirement to demonstrate prejudice.  To establish prejudice in the appellate-counsel context, a petitioner must show a reasonable probability that, but for counsel's failure to raise the omitted issues, he would have prevailed on

appeal.  *See Robbins*, 528 U.S. 259, 285-86; *see also Strickland*, 466 U.S. at 694.  In short, Carcamo never explains how the two issues he identifies—the alleged use of his family members to suggest dangerousness and the alleged interference because of bond insufficiency—would have supplied a viable ground for reversal.  This is not a case where the omitted issue presents an obvious path to relief that appellate counsel ignored.  Rather, Carcamo asks the Court to speculate that unspecified and unbriefed legal theories would have succeeded where appellate counsel's chosen arguments did not.  Such speculation cannot establish a reasonable probability of a different outcome.

In sum, Carcamo's claim consists of the bare assertion that these issues were "properly preserved" and therefore "stronger."  (Dkt. No. 3 at 14.)  Carcamo's conclusory allegations of prejudice do not rise to the level of a constitutional violation.  *See Koch*, 907 F.2d at 530 ("Mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."); *see also Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) ("A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of the *Strickland* test.")).  Nothing in the state court record suggests there is a reasonable probability the Fifth Court of Appeals would have vacated or reversed Carcamo's conviction had these issues been raised.

Here, the appellate court addressed the merits of the issues actually presented, and Carcamo offers no meaningful basis to conclude that his preferred claims would have fared any better.  As such, Carcamo has not demonstrated that appellate

26

counsel performed deficiently or that any alleged deficiency prejudiced his appeal.

The state court's denial of relief was not objectively unreasonable.

Accordingly, Ground Seven fails.

## II.    RECOMMENDATION

For the foregoing reasons, the Court should **DENY** the Petition for a Writ of

Habeas Corpus by a Person in State Custody (Dkt. No. 3), with prejudice.

**SO RECOMMENDED** on December 1, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).